UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KANTA RAITHATHA, and ASHWIN
RAITHATHA,

      Plaintiffs,

v.                                        Case No: 8:21-cv-1271-KKM-CPT

BAHAMA BAY CONDOMINIUM
ASSOCIATION, INC.,

      Defendant.

_____

BAHAMA BAY CONDOMINIUM
ASSOCIATION, INC.,

      Third-Party Plaintiff,

v.

FIVE STAR FACILITY MAINTENANCE,
LLC,

      Third-Party Defendant.

_____

## ORDER

    Imagine the following: you are out for a leisurely stroll in your condominium

complex and see a maintenance crew pressure washing. You notice that the pressure-washer

hoses extend from a parking spot across the sidewalk ahead, where you intend to walk. You also see two orange cones next to the hoses on the sidewalk, and you understand the need for caution. Instead of going around the pressure washer through the parking lot or changing the course of your stroll, you walk straight through the hoses and cones, tripping as you step over them. Certainly unfortunate. But what more should the condominium complex have done to alert you of the potential hazard? Under Florida law, nothing. The open and obvious danger and the additional warnings of the cones mean that no reasonable jury could conclude that the condominium association breached its duty of care. For this reason, Defendant Bahama Bay is entitled to summary judgment.

## I.     BACKGROUND[1]

Kanta and Ashwin Raithatha, residents of London, England, owned a timeshare at Bahama Bay Resort & Spa in Davenport, Florida. K.R. Dep. (Doc. 115-5) at 5:1–6:13. Before Kanta Raithatha tripped and broke her hip at Bahama Bay in 2019, the Raithathas visited their timeshare for extended periods several times a year. *See id.* Bahama Bay Condominium Association hired Five Star Facility Maintenance to service, manage, and maintain the Bahama Bay Resort & Spa. *See* Third-Party Compl. (Doc. 38) ¶¶ 4–7; Maintenance Services Agreement (Doc. 38-1); Contract of Sale Rights (Doc. 38-2).

---

[1] To the extent facts are capable of multiple inferences, the Court draws all reasonable inferences in the light most favorable to the nonmoving party. *Sconiers v. Lockhart*, 946 F.3d 1256, 1262 (11th Cir. 2020).

On June 3, 2019, the Raithathas were on a stroll around the Bahama Bay Resort. K.R. Dep. at 29:22–24; 35:6–8. During their walk, the Raithathas encountered one of Five Star's maintenance carts. *Id.* at 35:6–36:13. The cart was backed into a parking spot and was loaded with a power-washer engine. *See* Statement of Facts (Doc. 117) ¶ 6.[2] Because a Five Star employee was using the power washer at that moment, two power-washer hoses extended from the back of the maintenance cart—across the sidewalk and nearby grass— to a building where the Five Star employee was working. *Id.*; K.R. Dep. at 35:6–37:4. A.R. Dep. (Doc. 115-6) at 54:15–18. The sidewalk was also marked with caution cones highlighting the hoses extending across the sidewalk. K.R. Dep. at 35:11–13; A.R. Dep. at 55:10–12.

As they approached the cart and the hoses, the Raithathas both noticed the caution cones. A.R. Dep. at 55:10–12; K.R. Dep. at 135:4–7. Mrs. Raithatha also admitted during her deposition that she knew that the hoses created a tripping risk and that the caution cones alerted her to be careful. K.R. Dep. at 132:5–136:1. Notwithstanding the perceived danger, the Raithathas proceeded to walk over the hoses anyways. *Id.* at 35:22–36:6.

---

[2] Bahama Bay claims that its statement of facts is "undisputed," *see* Statement of Facts at 1, but the Raithathas respond that Bahama Bay's statement of facts includes several facts that are "patently false" in furtherance of "an effort to mislead the Court." Resp. to Def.'s MSJ (Doc. 119) ¶ 6. Accordingly, I do not rely on any of Bahama Bay's representations in the statement of facts and cite the statement of facts only in reference to the photograph contained in paragraph 6. *See* Statement of Facts ¶ 6. I may consider the photograph for reasons explained in the main body of this Order.

During their depositions, both Mr. and Mrs. Raithatha adamantly claimed that they had no choice but to walk through the hoses. *Id.* at 136:4–139:24; A.R. Dep. at 53:13–55:15. On one side of the sidewalk was the parking lot, and the Raithathas were afraid that they might be hit by traffic if they walked into the parking lot. K.R. Dep. at 124:21–125:22; A.R. Dep. at 53:13–54:14. On the other side of the path was grass and the power-washer hoses extended across the grass to a nearby building. A.R. Dep. at 54:15–18.

Both Mr. and Mrs. Raithatha tripped on the hoses; Mr. Raithatha steadied himself, but Mrs. Raithatha fell to the ground. *Id.* at 52:11–24. During her deposition, Mrs. Raithatha said that she "assume[d]" that she tripped because the Five Star employee unwittingly pulled the hoses when the Raithathas attempted to cross them. K.R. Dep. at 95:3–8, 96:4–17. Mr. Raithatha also testified that Five Star's employee seemed completely unaware of the accident after it occurred. A.R. Dep. at 24:7–19.

4

This photograph was captured shortly after Mrs. Raithatha's fall. *See* Statement of Facts ¶ 6.



*Id.* During her deposition, Mrs. Raithatha testified at one point that the photograph was inaccurate. K.R. Dep. at 51:20–23. But she never explained what was inaccurate about the picture. *See id.* at 37:7–55:13. More importantly, she affirmed that the picture shows her after the fall, her husband, the maintenance cart, and the hoses that she tripped on. *Id.* at 70:21–71:19. She ultimately admitted that the photograph was an accurate depiction. *Id.* at 54:14–55:13, 71:9–19.

Mr. Raithatha also disputed the accuracy of this photograph during his deposition, but he agreed that the photograph shows him and his wife, the maintenance cart, the cones, and the hoses shortly after Mrs. Raithatha's fall. A.R. Dep. at 35:18–40:6. When asked what was incorrect about the photograph, Mr. Raithatha explained that the photograph did not depict precisely what the scene looked like before the accident or immediately after the accident. *Id.* at 36:15–40:6. According to Mr. Raithatha, before the accident, the hoses were closer together. *Id.* Also, the cone on the left side of the picture was close to the road instead of in the middle of the sidewalk path. *Id.* The cone on the right was closer to the grass instead of the middle of the sidewalk path. *Id.* Mr. Raithatha also added that immediately after Mrs. Raithatha's fall, the cone on the left was tipped over. *Id.* 38:12–14.

Because the Raithathas are the nonmovants, I assume the truth of Mr. Raithatha's statements about the exact positioning of the hoses and the cones before and immediately after Mrs. Raithatha's fall. However, because the Raithathas both agree that the picture depicts the two of them, the maintenance cart, the cones, and the hoses that Mrs. Raithatha tripped over, and disagree only with the location of the hoses and cones as captured in the picture, the only reasonable inference is that this picture generally depicts the scene of the accident soon after—but not immediately after—Mrs. Raithatha's fall. *See Sconiers v. Lockhart*, 946 F.3d 1256, 1262 (11th Cir. 2020) (requiring courts to draw only *reasonable*

inferences in the light most favorable to the nonmoving party). As such, there is not a genuine dispute of material fact about the remainder of the picture.

After the fall, Mr. Raithatha approached the Five Star employee who was pressure washing and asked him to stop working. A.R. Dep. at 24:7–19. At the time of the accident, the employee was facing a building and wearing headphones. *Id.* at 12:2–6; 16:17–22. Mr. Raithatha tried to get his attention but could not until the employee saw Mr. Raithatha out of the corner of his eye. *Id.* at 24:8–17. Mr. Raithatha asked the employee to call for help and Mrs. Raithatha was eventually taken to the hospital in an ambulance. *Id.* at 24:17–19; K.R. Dep. at 57:8–21. Mrs. Raithatha broke her hip because of the accident. K.R. Dep. at 101:1–15. Doctors placed three pins in her hip, but Mrs. Raithatha may need a hip replacement in the future. *Id.* at 101:1–15; 104:22–105:2. She has also undergone physical therapy to rehabilitate her hip. *Id.* at 160:24–161:11.

In April 2021, the Raithathas sued Bahama Bay Condominium Association, Inc., and Five Star Facility Maintenance, LLC, alleging one count of negligence and one count of loss of consortium against both Defendants. Compl. (Doc. 1-1). On September 28, 2021, I dismissed Five Star as a defendant to the Raithathas' action. (Doc. 37). Bahama Bay then filed a third-party complaint against Five Star, alleging that it was indemnified by Five Star for any injury to the Raithathas. Third-Party Compl.

Now, Bahama Bay moves for summary judgment as to the Raithathas' action against it. Def.'s MSJ (Doc. 115). Five Star also moves for summary judgment as to Bahama Bay's third-party suit against it, though Five Star merely incorporates Bahama Bay's argument that Bahama Bay is not liable to the Raithathas. Third-Party Def.'s MSJ (Doc. 118). The Raithathas oppose both motions. *See* Resp. to Def.'s MSJ; Resp. to Third-Party Def.'s MSJ (Doc. 120).[3] Bahama Bay did not respond to Five Star's motion for summary judgment. Bahama Bay's motion for summary judgement is **GRANTED**; Bahama Bay's third-party suit against Five Star is **DISMISSED as moot**.

## II.   LEGAL STANDARD

Summary judgment is appropriate if no genuine dispute of material fact exists, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). A fact is material if it might affect the outcome of the suit under governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The movant always bears the initial burden of informing the district court of the basis for its motion and identifying those parts of the record that demonstrate an absence of a genuine issue of material fact. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608

---

[3] Because the Raithathas and Five Star are no longer opposing parties in this case, *see* (Doc. 37), I do not consider the Raithathas' response to Five Star's motion for summary judgment against Bahama Bay. *Cf.* Wright & Miller, 6 Fed. Prac. & Proc. Civ. § 1459 (3d ed.) ("The fact that the third party has been brought into the action does not revive any claims the original plaintiff may have had against the third party . . .").

(11th Cir. 1991). When that burden is met, the burden shifts to the nonmovant to present evidentiary materials (e.g., affidavits, depositions, exhibits, etc.) demonstrating that there is a genuine issue of material fact, which precludes summary judgment. *Id.* A moving party is entitled to summary judgment if the nonmoving party "fail[s] to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

I review the record evidence as identified by the parties and draw all legitimate inferences in the nonmoving party's favor. *See Sconiers v. Lockhart*, 946 F.3d 1256, 1262 (11th Cir. 2020). Here, to the extent that the record is disputed or capable of multiple inferences, I draw them in favor of the non-movant.

## III.   ANALYSIS

### A. Bahama Bay's Motion is Timely

The Raithathas argue that Bahama Bay's motion for summary judgment should be denied as untimely. Resp. to Def.'s MSJ ¶ 3. This argument is based on the August 5, 2022 deadline for dispositive motions that I imposed in the Amended Case Management and Scheduling Order. (Doc. 64) at 2.

Bahama Bay filed a timely motion for summary judgment by the August 5, 2022 deadline, (Doc. 101), but the Raithathas said that they could not respond to the motion for summary judgment until I resolved their pending motion for relief from technical

admissions. (Doc. 105) ¶ 5; (Doc. 109) ¶ 6. Accordingly, I denied Bahama Bay's motion for summary judgment without prejudice and allowed Bahama Bay to refile its motion for summary judgment within fourteen days after the Magistrate Judge resolved the pending motion for technical admissions. (Doc. 112). The Magistrate Judge resolved the motion for relief from technical admissions on November 28, 2022, and Bahama Bay refiled its motion for summary judgment on December 5, 2022. In the light of my order allowing Bahama Bay to refile its motion for summary judgment, (Doc. 112), Bahama Bay's motion is timely.

### B.  Bahama Bay Proves that there is No Genuine Dispute of Material Fact that Bahama Bay Did Not Breach Its Duty of Care

The Raithathas advance two counts against Bahama Bay: negligence and loss of consortium due to Bahama Bay's negligence. Compl. ¶¶ 6–13. To succeed on either count, the Raithathas must prove that Bahama Bay was negligent. The Raithathas must satisfy four elements to demonstrate negligence: (1) Bahama Bay had a duty to the Raithathas, (2) Bahama Bay breached its duty, (3) a "reasonably close causal connection" between Bahama Bay's breach and the Raithathas' injury, and (4) "[a]ctual loss or damage" suffered by the Raithathas. *Clay Elec. Co-op., Inc. v. Johnson*, 873 So. 2d 1182, 1185 (Fla. 2003) (quotation omitted).

As invitees at the resort, Bahama Bay owed the Raithathas a duty "to maintain the premises in a reasonably safe condition." *Wolf v. Sam's E., Inc.*, 132 So. 3d 305, 307 (Fla.

3d DCA 2014) (quotation omitted); *Wolford v. Ostenbridge*, 861 So. 2d 455, 456 (Fla. 2d DCA 2003). However, "some conditions are considered so obvious and not inherently dangerous that they do not, as a matter of law, support liability for the breach of the duty to maintain the premises in a reasonably safe condition." *TruGreen LandCare, LLC v. LaCapra*, 254 So. 3d 628, 631 (Fla. 5th DCA 2018). This is because a "proprietor has a right to assume that the invitee will perceive that which would be obvious to him upon the ordinary use of his own senses." *Earley v. Morrison Cafeteria Co. of Orlando*, 61 So. 2d 477, 478 (Fla. 1952). Thus, "[t]he obvious danger doctrine provides that an owner or possessor of land is not liable for injuries to an invitee caused by a dangerous condition on the premises when the danger is known or obvious to the injured party, unless the owner or possessor should anticipate the harm despite the fact that the dangerous condition is open and obvious." *De Cruz-Haymer v. Festival Food Mkt., Inc.*, 117 So. 3d 885, 888 (Fla. 4th DCA 2013) (quoting *Aaron v. Palatka Mall, L.L.C.*, 908 So. 2d 574, 576–77 (Fla. 5th DCA 2005)). In other words, a landowner does not breach its duty of care if a dangerous condition "is so open and obvious that an invitee may be reasonably expected to discover" the condition and "to protect himself." *Brookie v. Winn-Dixie Stores, Inc.*, 213 So. 3d 1129, 1133 (Fla. 1st DCA 2017) (quotation omitted). A landowner "d[oes] not violate any legal duty to" an invitee "who observe[s] [a] condition" but is "injured by failing

11

to use due care for his own safety, when a reasonable person could have easily avoided the obstacle and thereby prevented injury." *Id.* at 1131.

Bahama Bay argues that it is not liable as a matter of law because the pressure washing hoses were open and obvious perils. Def.'s MSJ at 4, 10, 18, 20. Bahama Bay is correct. No reasonable jury could conclude that Bahama Bay breached its duty based on the obvious danger doctrine. A landowner "is not required to take measures to avoid a danger which the circumstances as known to him do not suggest as likely to" result in injury. *McAllister v. Robbins*, 542 So. 2d 470, 471 (Fla. 1st DCA 1989); *see also Matson v. Tip Top Grocery Co.*, 9 So. 2d 366, 368 (Fla. 1942) ("The law does not require a proprietor of a public place to maintain his premises in such condition that an accident could not possibly happen to a customer."). As applied here, landowners do not breach the duty of ordinary care by allowing power-washer hoses to temporarily obstruct a sidewalk, especially when the hoses are marked with caution cones.

The undisputed facts establish why the above is true. Mrs. Raithatha admitted that she saw the hoses and the caution cones and appreciated the need to be careful to not trip on the hoses. K.R. Dep. at 132:5–136:1. In these circumstances, a reasonable landowner would not expect an invitee to walk directly through the hoses, failing "in the 'ordinary use of his own senses' to avoid the observed condition." *Brookie*, 213 So. 3d at 1134 (affirming the trial court's grant of summary judgment because the invitee knowingly walked directly

12

into a wooden pallet, instead of avoiding it). "[I]t is neither 'probable nor foreseeable' that someone familiar with a known potentially dangerous condition would disregard it and fail to protect oneself." *Smith v. Westdale Asset Mgmt., Ltd.*, 353 So. 3d 108, 111 (Fla. 1st DCA 2022).

The Raithathas respond that they were *forced* to walk over the power-washer hoses. Resp. to Def.'s MSJ ¶¶ 2, 11; K.R. Dep. 136:4–139:24; A.R. Dep. at 53:13–55:15. They argue that there was a parking lot on one side of the sidewalk, which they perceived to be so "[un]safe" that no one could ever venture into it. *See* K.R. Dep. at 124:21–125:17; A.R. Dep. at 53:13–54:14. On the other side of the sidewalk was grass and the power-washer hoses extended across the grass to a nearby building. A.R. Dep. at 54:15–18.

But the undisputed evidence contradicts this narrative and establishes that the Raithathas were not pitted against two dire choices. As a threshold matter, the Raithathas testified that they were on a leisurely stroll. K.R. Dep. at 7:10–14, 35:6–8. Thus, a reasonable jury could not infer that the situation forced them to confront the hoses or parking lot. They could have avoided the hoses simply by turning around and finishing their stroll elsewhere. *Brookie*, 213 So. 3d at 1137 ("The law provides protection to premises owners from unjustified and costly litigation, when any reasonably attentive invitee who saw an open and obvious condition—such as a pallet partially blocking a walkway—would act in his or her own interest in personal safety, and by the use of ordinary

13

common sense, avoid the observed transitory item."); *Arnoul v. Busch Ent. Corp.*, No. 8:07-cv-1490, 2008 WL 4525106, at *3 (M.D. Fla. Oct. 6, 2008) (Bucklew, J.) ("The law allows landowners . . . to trust that invitees will use their common sense to avoid obvious potential injury—by not walking into trees, for example.").

But even if altering the course of their walk was not feasible (or desirable), the photograph shows that the maintenance cart took up only part of the parking space, allowing room to walk in front of it without venturing into the roadway:



Statement of Facts ¶ 6. Because the Raithathas do not dispute the accuracy of the picture as to how much of the parking space the cart consumed and point to no contrary evidence

14

upon which a reasonable jury could conclude otherwise, there is no genuine dispute of material fact on this point. *See* K.R. Dep. at 37:7–55:13; A.R. Dep. at 35:18–40:6; *Davis v. Legal Servs. Alabama, Inc.*, 19 F.4th 1261, 1265 (11th Cir. 2021) (per curiam) ("When a movant shows that no genuine dispute of material fact exists, the burden shifts to the non-movant to demonstrate a genuine issue of material fact that precludes summary judgment." (citing *Clark*, 929 F.2d at 608). Thus, even accepting as true the Raithathas' fear of venturing into the parking lot, K.R. Dep. at 124:21–125:17; A.R. Dep. at 53:13–54:14, the evidence shows that their fear was objectively misplaced in this situation. Furthermore, even if the Raithathas needed to enter the roadway to avoid the hoses, a reasonable landowner would expect them to wait to cross in front of the cart until there was no oncoming traffic. Simply put, the hoses were a noticeable and avoidable obstacle and not inherently dangerous. There is no genuine dispute of material fact on this point for which a reasonable jury could find for the Raithathas.

*Brookie* reinforces this conclusion. In *Brookie*, the First District Court of Appeal held that the trial court correctly granted summary judgment for a landowner when the injured invitee observed an obstacle but failed to voluntarily avoid it. 213 So. 3d at 1130. The plaintiff tripped over an empty pallet at a Winn-Dixie and sued Winn-Dixie for "negligently failing to make the sidewalk safe to walk across." *Id.* The court held that summary judgment was appropriate because the pallet was open, obvious, and not

inherently dangerous. *Id.* at 1133. "It is neither 'probable nor foreseeable' that someone seeing a pallet on the ground, and having passed by it twice before, would fail to avoid the open and obvious condition." *Id.* at 1134. The court stressed that "every case will involve an accident, which cannot by itself mandate that summary judgment never be granted in cases involving open and obvious conditions." *Id.* Also, the court held that even if the pallet was a dangerous condition, a reasonable landowner would not expect an invitee to walk directly into the pallet. *Id.* (holding that the plaintiff "saw the purportedly dangerous condition but failed in the 'ordinary use of his own senses' to avoid the observed condition").

Smith v. Westdale Asset Management—a "trip-and-fall case involving a speed bump at an apartment complex"—is also illuminating. *See* 353 So. 3d at 110. In *Smith*, the trial court granted summary judgment for the defendant, an apartment complex. *Id.* The plaintiff tripped over an unpainted speed bump while she was searching for a mailbox. *Id.* She testified "that the unpainted speed bump had been partly concealed by the shade of a tree and she didn't see it," but "she also acknowledged that she wasn't looking ahead while walking on the roadway because she was searching for the mailbox." *Id.* The court held that the bump was not an inherently dangerous condition likely to cause injury. *Id.* at 111. But the court clarified that, even if it was, the landowner could reasonably expect the plaintiff to protect herself from the danger. *Id.* at 111–12. "Any tripping-related danger

presented by the common speed bump here was readily avoidable" had the plaintiff "pa[id] attention to the road that she had travelled before and watch[ed] her step." *Id.* at 112. Thus, the landowner "could not reasonably anticipate" that the plaintiff would "disregard the speed bump, kick it, fall, and injure herself." *Id.* Similarly, in this case, no landowner would reasonably anticipate that Mrs. Raithatha would disregard the caution cones, walk directly into the power-washing hoses, and injure herself.

Finally, it is important to note that the hoses were temporarily laid across the sidewalk while a Five Star employee was using them to clean the grounds of Bahama Bay Resort & Spa. This is a reasonable, frequent, and expected occurrence. In *Emmons v. Baptist Hospital*, the First District Court of Appeal affirmed the trial court's directed verdict in favor of a defendant hospital, even though the directed verdict reversed a jury finding that the hospital was partially liable for the invitee's injuries. 478 So. 2d 440, 441 (Fla. 1st DCA 1985). The plaintiff slipped and fell after an employee cleaned blood off the carpet of a hospital room. *Id.* The employee used shampoo to clean the carpet and placed a mat in front of the hospital room so that patrons would not slip on tile in the hallway when they exited the room. *Id.* Despite the mat, the plaintiff slipped and fell in the tile hallway. *Id.* at 441–42. The court held that the hospital did not create "an unreasonable hazard" or violate its duty to exercise "ordinary care." *Id.* at 442–43. "The cleaning of a floor at a hospital is a frequent and expected occurrence . . . [I]t is certainly reasonable to

17

assume that a hospital will, for the benefit of all concerned (including patients and visitors), expeditiously clean up blood from the carpet in a patient's room." *Id.* Furthermore, "[t]he room's occupants were informed of the wet condition of a portion of the carpet and a mat was placed near the door to remove moisture from the shoes of any occupant who might traverse the wet part of the carpet." *Id.* at 443. Because the hospital took reasonable precautions to prevent the foreseeable slipping risk, the hospital did not breach its duty to exercise ordinary care. *Id.*

Similarly, this case involves a circumstance in which Bahama Bay allowed for a temporary condition to clean its property. It is not only reasonable to expect that condominiums will power wash parts of their grounds, but desirable that they maintain their facilities. Furthermore, the power-washer hoses at issue here were flanked by bright orange caution cones (and I assume they were positioned as Mr. Raithatha testified, not as shown in the picture). This was a reasonable precaution that would alert invitees of the hazard. Indeed, the Raithathas admitted that they saw the cones and appreciated the need for caution. A.R. Dep. at 55:10–12; K.R. Dep. at 135:4–7; *see also* Statement of Facts ¶ 6. Thus, Bahama Bay could reasonably expect that the Raithathas would protect themselves from dangers posed by the hoses.

The Raithathas argue that there are several genuine disputes of material fact that preclude summary judgment. Specifically, they argue that there are material disputes of fact

about whether the photograph is authentic, Resp. to Def.'s MSJ ¶ 10, whether the Five Star employee moved the hoses as Mrs. Raithatha stepped over them, *id.* ¶ 11, whether Five Star or Bahama Bay was responsible for pressure washing at the time of the incident, *id.*, and where the hoses and the Five Star employee were located at the time of the accident. *Id.* None of these questions are genuine disputes of material fact.

As explained above, a fact is material if it might affect the outcome of the suit under governing law. *Liberty Lobby*, 477 U.S. at 248. Several of the above arguments do not concern material facts, so any dispute about them is irrelevant for determination of summary judgment. Furthermore, on a motion for summary judgment, I must draw "all *reasonable* inferences in the light most favorable to the nonmoving party." *Sconiers*, 946 F.3d at 1262 (emphasis added). If the nonmoving party's proposed inference is unreasonable (for example, if the nonmoving party fails to identify evidence refuting evidence put forth by the movant), I need not credit that proffered inference. *See id.*; *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) ("A mere 'scintilla' of evidence supporting the [non-movant's] position will not suffice; there must be enough of a showing that the jury could reasonably find for that party."). In the light of these standards, there is no genuine dispute of material fact.

First, the Raithathas' argue that the photograph is not authentic and thus cannot be considered at summary judgment. Resp. to Def.'s MSJ ¶ 10. But they conceded in their

depositions that the picture depicts the scene shortly after Mrs. Raithatha's fall. K.R. Dep. at 54:23–55:23, 71:9–19 (answering "seems like that, yes" to question "would you say that that is a fair and accurate depiction of the accident scene as it occurred that day?"); A.R. Dep. at 35:23–36:15 (agreeing that the photograph depicts the maintenance cart, the hoses and cones, the Raithathas, and a maintenance worker). As a result, I would overrule an authenticity objection at trial. *See, e.g.*, FED. R. EVID. 901(b)(1). Indeed, the standard for proving authenticity is low. *See In re Int'l Mgmt. Assocs., LLC*, 781 F.3d 1262, 1267 (11th Cir. 2015) (per curiam) (noting that the "authentication burden" under Rule 901 "is a light one"); *United States v. Caldwell*, 776 F.2d 989, 1001–02 (11th Cir. 1985) ("Authentication or identification under rule 901 merely involves the process of presenting sufficient evidence to make out a *prima facie* case that the proffered evidence is what it purports to be.").

Relatedly, although Mr. and Mrs. Raithatha initially disputed the accuracy of the photograph during their depositions, they both agreed that it is a picture of them, the maintenance cart, the hoses, and the caution cones soon after Mrs. Raithatha's fall. K.R. Dep. at 37:7–55:13, 71:9–19; A.R. Dep. at 35:18–40:6. Mrs. Raithatha went so far as to concede it *was* accurate. K.R. Dep. at 54:23–55:23, 71:9–19. And I assume Mr. Raithatha's statements about the position of the cones and the hoses to be true. *Id.* at 36:16–40:6. As they point to no other evidence of inaccuracies, I cannot infer that any others exist. As for

the differences in positioning of the hoses and the cones, they are immaterial because they do not affect the outcome of this case under governing law. *Liberty Lobby*, 477 U.S. at 248. Even crediting Mr. Raithatha's testimony, the Raithathas admit that they saw the hoses and caution cones, and the photograph shows that the hoses were avoidable, whether by turning around or going around the cart.

Second, the dispute about whether the Five Star employee pulled the hoses when Mrs. Raithatha fell is not material to the claims as alleged by the Raithathas. Even if the employee did, causing Mrs. Raithatha to fall, that would not change the outcome of this case under governing law. *Liberty Lobby*, 477 U.S. at 248. In their complaint, the Raithathas allege that Bahama Bay acted negligently by "failing to maintain the path" and that "[t]he negligent condition was known to" Bahama Bay. Compl. ¶¶ 8–9. The Raithathas did not allege that the Five Star employee acted negligently by pulling the hoses, or that Bahama Bay is vicariously liable for any negligent acts by the Five Star employee. *See generally* Compl. The Raithathas cannot reframe the complaint's allegations through their response to Bahama Bay's motion for summary judgment. *See Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) ("A plaintiff may not amend her complaint through argument in a brief opposing summary judgment."). Also, Bahama Bay exercised reasonable care because a reasonable landowner would expect an invitee to notice the hoses and cautions cones and to take care to avoid the hazard. Indeed, an ordinary

invitee would appreciate that one of the risks of stepping over the power-washer hoses is that the hoses might move while in use.

Third, the Raithathas state that there is an issue of fact regarding whether Bahama Bay or Five Star was responsible for power washing at the time of the incident. Resp. to Def.'s MSJ ¶ 11. This issue is likewise immaterial. And the Raithathas never attempt to explain why this dispute is material as to the Raithathas' suit *against* Bahama Bay. It simply has no bearing on whether Bahama Bay breached its duty to maintain its premises in a reasonably safe condition for the Raithathas.

Fourth, the Raithathas state that there are issues of fact regarding where the hoses were located, the distance between the hoses, and where the employee was located at the time of the accident. But it is not clear why any of these issues matter, and the Raithathas never explain why they are material. Moreover, notwithstanding the photograph, I assume that Mr. Raithatha's description of the hoses and the location of the Five Star employee are true. Even so, Bahama Bay did not breach its duty because a reasonable landowner would not expect an invitee to walk straight into a marked and avoidable obstacle, and Florida law makes it clear that the landowner does not breach its duty in this situation. *Brookie*, 213 So. 3d at 1134. The distance between the hoses or the location of the employee does not change that analysis.

22

Finally, it is important to note what the Raithathas do not contend in responding to the summary-judgment motion. They never argue that the cones and hoses were not open and obvious or that they were insufficient to alert them to take appropriate caution. *See* Resp. to Def.'s MSJ That is probably because Mrs. Raithatha admitted that she saw the hoses and cones and appreciated the need for care. K.R. Dep. at 132:5–136:1. Nor do the Raithathas argue that a reasonable landowner would foresee that an invitee would fail to protect herself despite the open and obvious nature of the dangerous condition because the hoses are so inherently dangerous. *See* Resp. to Def.'s MSJ In fact, their response to the summary-judgment motion does not even reference the obvious-danger doctrine. *See id.* Stated otherwise, they have waived any argument that Bahama Bay should have foreseen Mrs. Raithatha's injury, notwithstanding the obvious condition of the hoses, or that Bahama Bay should have done more to protect her. *Serendipity at Sea, LLC v. Underwriters at Lloyd's of London Subscribing To Pol'y No. 187581*, 56 F.4th 1280, 1287 (11th Cir. 2023) ("[W]e will not require the district court to undertake the proverbial hunt for the Red October submarine in the Atlantic Ocean in order to find a disputed issue of fact in the summary judgment record." (footnote omitted)); *Rd. Sprinkler Fitters Loc. Union No. 669 v. Indep. Sprinkler Corp.*, 10 F.3d 1563, 1568 (11th Cir. 1994) (affirming

that an argument raised in the pleadings was abandoned when the plaintiff failed to reassert the argument in its response to a summary-judgment motion).[4]

### C. Bahama Bay's Third-Party Suit Against Five Star is Dismissed as Moot

Bahama Bay's third-party complaint alleges that Five Star indemnified Bahama Bay for any injury to the Raithathas. *See generally* Third-Party Compl. As noted above, Five Star moves for summary judgment. But because I am granting summary judgment in favor of Bahama Bay, this third-party suit is now moot, and I lack jurisdiction to rule on Five Star's motion for summary judgment. *See Faser v. Sears, Roebuck & Co.*, 674 F.2d 856, 860 (11th Cir. 1982) (explaining that "if the defendant has no liability to the plaintiff, then the third-party defendant has no liability to the defendant-third party plaintiff" and the third-party complaint "necessarily" becomes moot when summary judgment is granted in favor of the defendant). Without jurisdiction, I dismiss the third-party complaint without prejudice.

---

[4] *Accord Resol. Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (en banc) ("There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment. Rather, the onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned." (citation omitted)); *Gennusa v. Canova*, 748 F.3d 1103, 1116 (11th Cir. 2014); *Solutia, Inc. v. McWane, Inc.*, 672 F.3d 1230, 1239 (11th Cir. 2012) (per curiam).

## IV.   CONCLUSION

Accordingly, the following is **ORDERED**:

1. Bahama Bay Condominium Association's motion for summary judgment, (Doc. 115), is **GRANTED**. As to Kanta Raithatha's and Ashwin Raithatha's action against Bahama Bay Condominium Association, the Clerk is directed to enter **JUDGMENT** in favor of Bahama Bay Condominium Association.

2. Bahama Bay Condominium Association's third-party complaint against Five Star Facility Maintenance, (Doc. 38), is **DISMISSED without prejudice as moot**. As to Bahama Bay Condominium Association's third-party action against Five Star Facility Maintenance, the Clerk is directed to enter **JUDGMENT**, which shall read, "This case is dismissed without prejudice."

3. The Clerk is directed to terminate any pending motion and deadline, and to **CLOSE** this case.

**ORDERED** in Tampa, Florida, on August 18, 2023.

Kathryn Kimball Mizelle
United States District Judge